### JOHN J. BRADFORD *v.* JOHN J. MOORE.

**Sale of Land for Taxes — Void When Assessed to the State.**

A sale of land for taxes is void when it was assessed to the State, and the purchaser gets no title.[1]

Unlawful entry and detainer by appellee, Moore, against appellant, Bradford. From verdict and judgment for plaintiff, defendant appeals.

On the trial the plaintiff introduced his deed to the land, which was a tax deed, showing sale for taxes, April 28, 1881, for the taxes of 1880; defendant objected to the introduction of the deed. Plaintiff then rested. Defendant introduced the assessment roll of 1879, which showed that the land was assessed to the State, and rested. Plaintiff then introduced, over defendant's objection, a book compiled by the auditor of public accounts, under chapter 9 of the Acts of 1880, containing a list of the lands held by the State. This list did not include the land in controversy. It was conceded that the land sued for was assessed to the State at the time it was sold, and so shown by the assessment roll approved by the board of supervisors.

---

1

Although the statute provides that the failure to assess land to the true owner shall not affect a tax title based thereon, yet where land, though belonging to an individual and liable to taxation, is assessed to the State, and the roll is approved without any corrections, a sale of such land for taxes is void, because on the face of the proceedings there is no power to sell, the collector being forbidden to sell land of the State. Redmond *v.* Banks, 60 Miss. 293; Edmondson *v.* Granberry, 73 Miss. 723; 19 So. 676.

APPEALED from Circuit Court, Hancock county, S. H. TERRAL, Judge.

Reversed and remanded, March 12, 1883.

*Attorneys for appellant, Calhuon & Green.*

*Attorneys for appellee, Nugent & McWillie.*

Brief of Calhuon & Green:

The land was assessed to the State, and the sale was, therefore, not only unauthorized by law, but absolutely forbidden by it. Redmond v. Bank, Mss. Opin.

This is not cured by the act to "systematize the records," etc., Laws of 1880, p. 88. This act was solely for the convenience of officers to avoid blunders, and never intended to supply a judgment by the board of supervisors. No law makes the list, recognized by that act, to be compiled by the auditor, an assessment, or notice to anybody, or a judgment, or confirmation of anything. The act was designed simply as a part of a legislative scheme of bookkeeping.

Brief of Nugent & McWillie:

The plaintiff based his claim to the property in controversy on the tax-collector's deed, dated April 28, 1881, which recites that *the sale was made according to law and by the order of the board of supervisors of Hancock county* for the taxes assessed for the year 1880.

The introduction of the deed was objected to by the defendant, and, the court having overruled the objections, the plaintiff rested his case. Whereupon the defendant introduced the assessment roll of Hancock county for the year 1879 (which was duly approved by the board of supervisors), and showed that the lands in controversy were assessed to the State. The plaintiff then introduced a book, compiled by the auditor of public accounts, containing a list of all the lands held by the State in Hancock county, made under chapter 9, Acts of 1880 of the State of Mississippi, and filed in the office of the sheriff prior to the day said lands were sold, and *showing that said lands were not held by the State for taxes.* The introduction of this book in rebuttal was objected

to by the defendant and objection overruled. There was no other evidence on either side.

The objection to the introduction of the deed—that it did not show that the sale took place on the day fixed by law for tax-collector's sales—is without merit. The deed declares the sale to have been made by order of the board of supervisors of the county, and section 558, Code 1880, authorizes *sale at any time* by order of the board. It was not necessary to produce the order of the board, for, apart from the presumption of the propriety of the acts of public officers, the statute, section 526, Code 1880, expressly provides that the conveyances of the tax-collector shall be *prima facie* evidence that the assessment *and sale* of the land were legal and valid.

The introduction of the record sent down by the auditor of public accounts to indicate the lands really held by the State was proper to rebut the idea that the lands in controversy were State lands at the time of the sale. The assessment of 1879, upon which the lands in suit appeared, was introduced to show that they were already held by the State; and the authenticated list of all the lands held by the State in that county, showing negatively that they were not held by the State when sold, was certainly competent in rebuttal.

The act to systematize the records of State tax lands, etc., Acts of 1880, p. 88, was intended to furnish, through the compilation of the auditor, a consolidated record of all the lands held by the State for taxes in each county, and the officials of the county were required to observe such records as correctly representing the lands held by the State. The auditor was required to retain a copy of the list for each county in his office, which, with the copy sent to the county, was expected to serve as a safe means of ascertaining what lands really were held by the State, and determine both the auditor and the county officials in their dealings with them as subjects of taxation.

The list did not show the lands in controversy, and, therefore, establishes by negative the fact that they were not State lands. It was made long after the assessment of 1879, when the lands, if indeed they had belonged to the State, may have been purchased by the defendant or some other person, and again forfeited.

The instructions refused to defendant clearly ought to have been refused, for there is no evidence in the case to which they

have any relation. The first is without application, for the reason that plaintiff had the State's deed and exhibited the rectified record of the auditor, showing, at least negatively, that the lands were not held or claimed by the State. The auditor's record was intended to correct just such mistakes when lands were erroneously assessed to the State, and the assessment roll of 1879, and could not be suffered to impeach the conveyance from the State, supported by the auditor's list.

The second and last instruction for defendant, refused below, calls in question the conduct of the tax-collector in selling all the lots together. There is not the slightest evidence that he did not sell them one lot at a time, as the law required, and, in the absence of proof to the contrary, the court will presume that he did his duty. The deed itself, in fact, is *prima facie* evidence that he made a proper and regular sale.

The two instructions granted the plaintiff are correct, but, were they not, the verdict is, in view of the evidence, too manifestly right to be disturbed.

OPINION.—*Per curiam:*

According to the opinion in Redmond *v.* Banks, Mss., the land was not subject to sale for taxes while it remained assessed to the State, and the sale conferred no title. The book from the auditor's office, showing that this land was not claimed by the State, made no difference.

*Judgment reversed* and cause remanded for a new trial.